663 P.2d 608

**Theo HUNSAKER, Contestor-Appellee,**

v.

**Percy DEAL, Contestee-Appellant.**

No. 1 CA–CIV 5914.

Court of Appeals of Arizona,
Division 1, Department B.

April 28, 1983.

Vlassis & Ott by George P. Vlassis, Gary Verburg, Phoenix, for contestee-appellant.

Law Offices of Raleigh W. Johnson by Raleigh W. Johnson, Holbrook, for contestor-appellee.

OPINION

FROEB, Presiding Judge.

This appeal is brought from a judgment of the Navajo County Superior Court finding that Percy Deal, the successful candidate for the Board of Supervisors in Supervisor District No. One, was ineligible to hold that office and declaring a vacancy to exist. We reverse the judgment because the election contest was untimely filed and therefore the superior court lacked jurisdiction to hear it.

This is the third of three election contest lawsuits. The first two suits have little bearing on the issues now before the court and are merely summarized. The first was filed on October 28, 1980, by several residents of Holbrook, Arizona, seeking to disqualify Deal from the election. In it, the superior court issued an order restraining the Navajo County Board of Supervisors from issuing a certificate of election to Deal. This suit was later dismissed and the temporary restraining order dissolved on January 7, 1981. On that day, Deal was issued a certificate of election and sworn in as a supervisor of Navajo County. A second lawsuit had been filed after the election on November 17, 1980, by Theo Hunsaker challenging the election. That suit, with the first, was dismissed on January 7, 1981. On January 14, 1981, Hunsaker filed this suit contesting Deal's election.

Deal moved to dismiss this action for lack of jurisdiction on the ground that the petition had not been filed within the statutory time period for filing an election contest. The trial court denied Deal's motion and the matter proceeded to trial. The trial court found that Deal was not a resident of Navajo County and was therefore ineligible to be a member of the Board of Supervisors. Since we reverse for lack of jurisdiction, we do not reach the issue of residency and

express no opinion with respect to the matter, nor to the other arguments raised by Hunsaker.

The jurisdictional time limit for bringing an election contest in county elections is "within five days after completion of the canvass of the election and declaration of the result thereof by [the Board of Supervisors] . . . ." A.R.S. §§ 16–673–74. Time elements in election statutes are jurisdictional and the time requirements for filing an election contest will be strictly construed. *Bedard v. Gonzales,* 120 Ariz. 19, 583 P.2d 906 (1978); *Donaghey v. Attorney General,* 120 Ariz. 93, 584 P.2d 557 (1978).

Deal argues that the petition filed on January 14, 1981, commencing this litigation, was not filed "within five days after completion of the canvass of the election and declaration of the result thereof." He contends that when the results of the canvass were announced on November 10, 1980, the five-day filing requirement began to run.

Hunsaker contends that the time for filing did not begin to run on November 10, 1980, because the Board did not canvass the election results or declare Deal elected in accordance with the Arizona election statutes. He raises the following legal discrepancies: (1) there is no indication that the returns were actually canvassed; (2) the official canvass was not entered upon the minutes of the Board; (3) there was no declaration that Deal was the person who received the highest number of votes for supervisor from District One; and (4) there was no indication that the Board voted to declare the successful candidates.

We hold that the Board of Supervisors sufficiently complied with the election statutes involved and legally declared Deal to be the successful candidate.

The election statutes most directly concerned are as follows:

§ 16–643.

The canvass of the election returns shall be made in public by opening the returns, other than the ballots, and determining the vote of the county, by polling places, for each person voted for. . . .

§ 16–646.

A. When the result of the canvass is determined, the clerk of the board of supervisors shall enter upon the records of the board a statement, known and designated as the official canvass, which shall show:

1. The number of ballots cast in each precinct and in the county.

2. The number rejected in each precinct and in the county.

3. The titles of the offices voted for and the names of the persons, together with the party designation, if any, of each person voted for to fill the offices.

4. The number of votes by precincts and county received by each candidate.

5. The numbers and a brief title of each proposed constitutional amendment and each initiated or referred measure voted upon.

6. The number of votes by precincts and county for and against such proposed amendment or measure.

§ 16–647.

The board of supervisors shall declare elected the person receiving the highest number of votes cast for each office to be filled by the electors of the county or a subdivision thereof, and the clerk of the board shall, unless enjoined from so doing by an order of the court, deliver to each such person, upon compliance with the provisions imposed by law upon candidates for office as conditions precedent to the issuance of such certificates, a certificate of election, signed by the clerk and authenticated with the seal of office of the board of supervisors.

Although it appears that the Board validly conducted its official canvass of the election returns, we do not review the canvass as such because we are concerned primarily with the question of whether the election contest was timely filed. If Hunsaker did not file the suit within five days after completion of the canvass and declaration of the result by the Board of Supervisors, it must be dismissed and any inquiry into the canvass beyond whether it was "completed"

is inappropriate. As our further discussion reveals, there is no doubt that it was "completed."

We turn then to the central question raised: Did the Board declare Deal elected? It is here we must refer to the official minutes of the Board of Supervisors for November 10, 1980. They are as follows:

Carol Sue Cain, Elections Director, presented the Canvass of the November 4, 1980 General Elections to the Board of Supervisors. Johnny L. Butler made a motion to approve the canvass of the November 4, 1980 General Elections and that the Clerk of the Board send the Certificates of Election to those who received the highest number of votes for the County Offices. The motion was seconded by Norman H. Turley.

■ Although we recognize that these minutes are not a polished model for official proceedings, we find that they adequately reflect a declaration by the Board that Deal was elected as the successful candidate for supervisor of District One. The fact that the minutes do not reflect a vote, as such, is not fatal; the Navajo County Board of Supervisors consists of three members. Butler made the motion to approve the canvass and it was seconded by Turley. Under the circumstances, this is tantamount to a vote approving the canvass.

Next, the Board directed the clerk of the Board to send certificates of election "to those who received the highest number of votes for the county offices." This is adequate as a declaration that Deal was elected. The Board approved the canvass and in accordance with A.R.S. § 16–646 it was entered upon the *records* of the Board. We emphasize here the word "records." The statute does not say "minutes." Hunsaker's contention that the official canvass must be set forth in the minutes of the Board is not well taken. It is sufficient that the Board approve the canvass and that it is entered in the official *records* of the Board. In this way, the canvass is given official approval and at the same time is made available to all persons having an interest. From the minutes quoted earlier, the successful candidates are declared elected by reference to the official canvass. We can find no provision in the statutes which would require that the names of the successful candidates be set forth in the minutes themselves, although better practice might dictate that the Board do so.

While the time limits for filing an election contest in court are strictly applied, that is not to say the election statutes themselves must in all instances be strictly construed. In fact, the legislature has provided otherwise in A.R.S. § 16–644 with respect to precinct returns:

No list, tally, certificates or endorsement returned from any precinct shall be set aside or rejected for want of form, or for not being strictly in accordance with the explicit provisions of this title, if they can be clearly understood; *nor shall any declaration of result, commission or certificate be withheld or denied by reason of any defect or informality in making the returns of the election in any precinct, if the facts which the returns should disclose can be definitely ascertained.* (emphasis added)

We conclude that Deal was declared elected by the Board of Supervisors at its meeting on November 10, 1980, and that as a consequence the five-day limit within which an election contest may be filed commenced to run. Since this suit was not filed within such time, the trial court erred in denying the motion to dismiss filed by Deal.

As a final issue, Hunsaker argues that Deal is estopped from contending he was declared elected on November 10, 1980, because he took a contrary position in the earlier election contest which was dismissed. While it is true that Deal initially made such an argument in the earlier suit, he withdrew it before decision and the court dismissed the action on other jurisdictional grounds.

In view of the foregoing, we need not reach other issues presented on appeal. The judgment of the trial court is reversed and the case is remanded for dismissal.

GRANT and MEYERSON, JJ., concur.